THIS CONSTITUTES NOTICE OF ENTRY
AS REQUIRED BY FRCP, RULE 77(d).

Priority ✓
Send
Enter ✓
Closed
JS-5/JS-6
JS-2/JS-3
Scan Only

FILED
CLERK, U.S. DISTRICT COURT

JUL 31 2006

CENTRAL DISTRICT OF CALIFORNIA
EASTERN DIVISION        BY DEPUTY

ENTERED

JUL 31 2006

CLERK, U.S. DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
EASTERN DIVISION
DEPUTY

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| SHIFT, LLC, et al. | Case No. EDCV 03-1299-VAP(SGLx) |
| Plaintiffs, | **[Motion filed on June 2, 2006.]** |
| v. | |
| MX FACTORS, LLC, et al. AND DOES 1-10, | **ORDER (1) DENYING DEFENDANT BUSINESS BANK OF NEVADA'S MOTION TO DISMISS PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 12(b)(3); (2) GRANTING IN PART AND DENYING IN PART DEFENDANT BUSINESS BANK OF NEVADA'S MOTION TO DISMISS PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 12(b)(6)** |
| Defendants. | |

The Court has received and considered all papers filed in support of, and in opposition to, Defendant Business Bank of Nevada's Motion to Dismiss.  The Motion is appropriate for resolution without hearing.  See Fed. R. Civ. P. 78; Local Rule 7-15.  For the reasons set forth below, Business Bank of Nevada's Motion to Dismiss pursuant to Federal Rule of Civil Procedure Rule 12(b)(3) is DENIED.  Business Bank of Nevada's Motion to Dismiss

DOCKETED ON CM

JUL 31 2006

1 | pursuant to Federal Rule of Civil Procedure 12(b)(6) is

2 | GRANTED IN PART and DENIED IN PART.

3

4 | **I. BACKGROUND**

5 | **A.   Procedural History**

6 | On November 12, 2003, ninety-one Plaintiffs

7 | ("Plaintiffs") filed a Complaint in this Court against

8 | fourteen Defendants ("Defendants"), including Business

9 | Bank of Nevada ("BBN") and its officers, Pamela Pallan

10 | ("Pallan") and Trina Reno ("Reno").  Plaintiffs filed a

11 | First Amended Complaint ("FAC") that lists twenty-four

12 | Claims, with each Defendant named in each Claim.[1]

13 | Plaintiffs' FAC stems from an alleged "Ponzi" scheme on

14 | the part of Defendants, in which Defendants allegedly

15 | attracted investors to fraudulent investments that

16 | promised high returns within a short period of time.

17 | [FAC ¶ 15.]

18

19 | On June 2, 2006, BBN filed a Motion to Dismiss the

20 | FAC ("Mot.") because of improper venue pursuant to

21 | Federal Rule of Civil Procedure 12(b)(3) "(Rule

22 | 12(b)(3))" and failure to state a claim upon which relief

23 | can be granted pursuant to Federal Rule of Civil

24 | Procedure 12(b)(6)

25

26

27 | [1] On May 9, 2005, the Court rejected Plaintiffs' attempt to file a Second Amended Complaint, in part

28 | because Plaintiffs did not seek leave of Court to file it.

("Rule 12(b)(6))."[2]  BBN requested a July 3, 2006,
hearing date.

    BBN's Motion attacks the following eight Claims:
Violation of the Racketeer Influenced and Corrupt
Organizations Act ("RICO"); Breach of Contract; Breach of
Fiduciary Duty; Fraud/Intentional Misrepresentation;
Negligent Misrepresentation; Negligence; Conversion; and
Breach of the Covenant of Good Faith and Fair Dealing.
[Mot. at 7.]  Additionally, BBN challenges Plaintiffs'
request for punitive damages.  [Id. at 15-16.]

    Plaintiffs filed Opposition on June 19, 2006.  BBN
filed a Reply on June 26, 2006.  On June 27, 2006, the
Court took the matter off calendar, deeming it
appropriate for resolution without hearing pursuant to
Local Rule 7-15.

**B.   Plaintiffs' Allegations**

    Defendants were involved in a swindle known as a
"Ponzi scheme," in which persons fraudulently attract
investors with promises of "extremely high returns within

---

    [2] BBN asserts that its Motion to Dismiss is also
predicated on Federal Rules of Civil Procedure 12(b)(1)
(lack of subject matter jurisdiction) and 12(b)(2) (lack
of personal jurisdiction).  [Mot. at 5.]  In the body of
its Motion, however, BBN never actually presents
arguments as to why Plaintiffs' FAC should be dismissed
under these two rules.  Accordingly, the Court will
consider BBN's Motion as one brought solely under Rules
12(b)(3) and 12(b)(6).

a very short period of time." [FAC ¶ 15.]  In this case, Defendants promised a 12 percent quarterly return on investment, and a 57 percent annual compounded return. [Id. ¶ 16.]  Defendants "dup[ed] [Plaintiffs]. . . out of millions of dollars."  [Id.]

Specifically, on February 28, 2000, Defendant MX Factors L.L.C. ("MX") was formed.  [Id. ¶ 1.]  MX's "managing members" were Richard M. Harkless ("R. Harkless") and Julie D. Harkless ("J. Harkless").  MX, R. Harkless, and J. Harkless sold unregistered securities to the public for the purpose of raising investment capital to operate a "factoring business."  [Id. ¶ 2.]

Defendants JTL Financial Group ("JTL"), BBH Resources, L.L.C. ("BBH"), and Will Jackson & Associates ("WJA") entered into written contracts with MX, in which they agreed to sell unregistered securities on behalf of MX for a commission.  [Id. ¶¶ 3-5.]  Under these contracts, JTL, BBH, and WJA were to provide investment capital to MX, which MX would use to make secured loans to certain businesses, primarily construction contractors.  [Id. ¶ 6.]  As collateral for these loans, MX obtained liens on the borrowers' accounts receivables. [Id.]  Ninety days after each provision of investment capital from JTL to MX, MX would receive its principal, as well as

1  a 12 percent investment return (which later went to 14

2  percent), to be paid to public investors.   [Id.]

3

4      Beginning March 26, 2002, Plaintiffs signed a series

5  of written contracts with JTL and BBH for the purpose of

6  investing Plaintiffs' funds in MX's factoring business.

7  [Id. ¶ 7.]   JTL and its president, Randy W. Harding

8  ("Harding"), represented to Plaintiffs in prospectuses,

9  brochures, and advertisements that MX had a track record

10  of success, and that MX complied fully with all federal

11  and state laws and regulations.   [Id. ¶ 8.]

12

13      In June 2002, JTL represented to Defendants that MX

14  had developed a new investment vehicle that was capable

15  of generating profits equal or superior to MX's factoring

16  business.   [Id. ¶ 10.]   The new investment was a "crab

17  venture" in Mexico, which was to be operated by an MX

18  affiliate called Baja Fisheries, L.L.C. ("Baja").   [Id.]

19  JTL told Plaintiffs that their funds would be invested in

20  either MX's factoring business or Baja's crab venture, at

21  MX's discretion, and that about half of their funds would

22  be invested in each of these ventures at any given time

23  to achieve diversification.   [Id. ¶ 11.]

24  ///

25  ///

26  ///

27  ///

28

1    Defendants held seminars in Palm Springs, California,
2 in which they solicited Plaintiffs and other members of
3 the public to invest in the fraudulent securities.  [Id.
4 ¶ 145.]

5

6    The factoring and crab businesses were used as
7 devices to entice and deceive Plaintiffs into investing
8 money with Defendants.  [Id. ¶ 13.]  Neither business
9 yielded a return on investment of 12 percent per quarter,
10 "except on a relatively small scale."  [Id. ¶ 14.]
11 Additionally, most of the payments made to Plaintiffs by
12 Defendants pursuant to the contracts were not from
13 profits gained through Defendants' businesses, but rather
14 from money derived from principal obtained by Defendants
15 from other investors.  [Id.]

16

17    BBN is a corporation formed in Nevada, with its
18 principal place of business in Las Vegas, Nevada.  [Id. ¶
19 124.]  Pallan and Reno are officers of BBN.  [Id. ¶
20 139(a).]   Pallan, Reno, "and/or" BBN engaged in a joint
21 enterprise with Defendants by knowingly "endorsing
22 Defendants' business activities, accepting deposits from
23 Defendants and/or Plaintiffs, referring business to
24 Defendants, and accepting referral business from
25 Defendants . . . ."  [Id. ¶ 22.]  BBN "actively solicited
26 Plaintiffs' business and deposits by providing offering
27 ///
28

6

1  materials to all Plaintiffs invested in MX securities."

2  [Id.]  Pallan and Reno "knew, or should have known" that

3  the money received from Defendants was derived from

4  Defendants' "fraudulent" securities transactions.  [Id. ¶

5  139(a).]

6

7       Defendants have refused to pay Plaintiffs their

8  guaranteed returns pursuant to the contracts.  [Id. ¶

9  17.]  Additionally, Defendants have refused to return

10  Plaintiffs' investment capital, as demanded.  [Id.]

11  Defendants were ordered to cease and desist their

12  "illegal business operations" through a September 26,

13  2003, letter from the California Department of

14  Corporations.  [Id.]

15

16    A state expert in the field of fraud detection has

17  stated that Defendants have engaged in a "'classic' Ponzi

18  scheme.  [Id. ¶ 18.]  The expert found that MX had only

19  one actual customer, lending credence to the theory that

20  MX did not have the customer base to support the

21  investment returns promised to Plaintiffs.  [Id.]

22

23       **II. MOTION TO DISMISS FOR IMPROPER VENUE**

24  **A.   Legal Standard**

25       Under Rule 12(b)(3), a defendant may make a motion to

26  dismiss a complaint for improper venue.  Under federal

27  law:

28

1       A civil action wherein jurisdiction is not founded

2       solely on diversity of citizenship may . . . be

3       brought only in (1) a judicial district where any

4       defendant resides, if all defendants reside in the

5       same State, (2) a judicial district in which a

6       substantial part of the events or omissions giving

7       rise to the claim occurred, or a substantial part of

8       property that is the subject of the action is

9       situated, or (3) a judicial district in which any

10      defendant may be found, if there is no district in

11      which the action may otherwise be brought.

12  28 U.S.C. § 1391(b).

13

14      When deciding a motion to dismiss under Rule

15  12(b)(3), the Court need not accept the pleadings as true

16  and may consider facts outside the pleadings.  R.A.

17  Argueta v. Banco Mexicano, S.A., 87 F.3d 320, 324 (9th

18  Cir. 1996).  The burden is on the plaintiff to establish

19  venue.  Bartholomew v. Va. Chiropractors Ass'n, Inc., 612

20  F.2d 812, 816 (4th Cir. 1979).

21

22      Where, as here, a claim for improper venue is

23  predicated on 28 U.S.C. 1391(b)(2) (alleged lack of

24  events occurring in the judicial district in which the

25  action was brought), the Ninth Circuit has held that "in

26  a tort

27  ///

28

1 action, the locus of the injury [is] a relevant factor."

2 Myers v. The Bennett Law Offices, 238 F.3d 1068, 1076

3 (9th Cir. 2000).

4

5 **B.  Discussion**

6     BBN argues that "[n]one of the acts alleged in

7 Plaintiffs' complaint occurred within the jurisdiction of

8 this Court, and Plaintiffs' complaint offers no

9 justification as to why this matter should be venued in"

10 this District.  [Mot. at 3.]  BBN further asserts that

11 "if any Plaintiff in this case opened a bank account with

12 [BBN], it was opened at a Nevada location."  [Id.]

13

14     Plaintiffs aver that a "'substantial' part of the

15 events giving rise to the Plaintiffs' claims occurred in

16 Corona and Palm Springs, California."  Plaintiffs offer

17 the testimony of attorney Alexandra T. Webber, who

18 declares that she investigated Plaintiffs' claims and

19 that "the majority of the plaintiffs in this case reside

20 in Corona and Palm Springs, California."  [Plaintiffs'

21 Declaration of Alexandra T. Webber ("Webber Decl.") ¶¶ 1-

22 6.]  Additionally, she alleges, "[i]nvestors received

23 advertising and promotional materials from Mx Factors and

24 Business Bank of Nevada, at their homes, churches,

25 ///

26 ///

27 ///

28

schools, or places of work located in and around Corona and Palm Springs, California."[3]   [Id. ¶ 9.]

Thus, although Plaintiffs may not have alleged in their FAC grounds for venue in the Central District of California, they have offered such an allegation in opposition to BBN's 12(b)(3) motion, which is proper under Ninth Circuit precedent.  See R.A. Argueta, 87 F.3d at 324.

All of Plaintiffs' Claims center around Defendants' alleged actions to attract investors into a fraudulent investment scheme.  [FAC ¶ 15.]  According to Plaintiffs, Defendants' actions to lure the investors took place in this district, and Defendants have offered no argument to rebut Plaintiffs' evidence of this.  Accordingly, the locus of the injury took place in this District, Myers, 238 F.3d at 1076, and the Court denies Defendants' Motion to Dismiss for Improper Venue.

## II. MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED

### A.  Legal Standard

Under Rule 12(b)(6), a party may bring a motion to dismiss for failure to state a claim upon which relief

---

[3] The Court overrules BBN's objection to Webber's statements regarding the residence of Plaintiffs and their receipt of the reference list.

can be granted.  Dismissal is appropriate when it is
clear that no relief could be granted under any set of
facts that could be proven consistent with the
allegations set forth in the complaint.  See <u>Williamson</u>
<u>v. Gen. Dynamics Corp.</u>, 208 F.3d 1144, 1149 (9th Cir.
2000); <u>Big Bear Lodging Ass'n v. Snow Summit, Inc.</u>, 182
F.3d 1096, 1101 (9th Cir. 1999).

The Court must view all allegations in the complaint
in the light most favorable to the non-moving party and
must accept all material allegations –- as well as any
reasonable inferences to be drawn from them –- as true.
See <u>Big Bear Lodging Ass'n</u>, 182 F.3d at 1101; <u>Am. Family</u>
<u>Ass'n, Inc. v. City and County of San Francisco</u>, 277 F.3d
1114, 1120 (9th Cir. 2002).

The scope of review under Rule 12(b)(6) is generally
limited to the contents of the complaint.  <u>Clegg v. Cult</u>
<u>Awareness Network</u>, 18 F.3d 752, 754 (9th Cir. 1994).
Nevertheless, "a document is not 'outside' the complaint
if the complaint specifically refers to the document and
if its authenticity is not questioned." <u>Branch v.</u>
<u>Tunnell</u>, 14 F.3d 449, 453 (9th Cir. 1993), overruled on
other grounds by <u>Galbraith v. Santa Clara</u>, 307 F.3d 1119,
1125-27 (9th Cir. 2002).  The Court may also consider
exhibits submitted with the complaint, <u>Hal Roach Studios</u>
<u>v. Richard Feiner & Co.</u>, 896 F.2d 1542, 1555 n.19 (9th

1 Cir. 1990), and "take judicial notice of matters of

2 public record outside the pleadings," <u>Mir v. Little Co.</u>

3 <u>of Mary Hosp.</u>, 844 F.2d 646, 649 (9th Cir. 1988)

4 (quotation marks omitted).

5

6 **B.   Discussion**

7       **1.   Racketeer Influenced and Corrupt Organizations**

8             **Act**

9       Plaintiffs allege that BBN violated RICO.   [FAC ¶¶

10 177-186.]   They assert that the underlying crimes

11 committed by BBN and the other Defendants are mail fraud

12 pursuant to 18 U.S.C. § 1341 and wire fraud under 18

13 U.S.C. § 1343.   [<u>Id.</u> ¶ 179.]

14

15       Under RICO,

16       "racketeering activity" means . . . any act which is

17       indictable under any of the following provisions of

18       title 18, United States Code: . . . section 1341

19       (relating to mail fraud), section 1343 (relating to

20       wire fraud) . . . .

21 18 U.S.C. § 1961(1)(B)

22

23       Private plaintiffs are permitted to sue under RICO:

24       Any person injured in his business or property by

25       reason of a violation of section 1962 of this chapter

26       may sue therefor in any appropriate United States

27       district court . . . .

28

1  18 U.S.C. § 1964(c).

2

3      Plaintiffs here allege three RICO violations by all

4  Defendants:

5      (1) 18 U.S.C. § 1962(a):

6      It shall be unlawful for any person who has  received

7      any income derived, directly or indirectly, from a

8      pattern of racketeering activity or through

9      collection of an unlawful debt in which such person

10     has participated as a principal within the meaning of

11     section 2, title 18, United States Code, to use or

12     invest, directly or indirectly, any part of such

13     income, or the proceeds of such income, in

14     acquisition of any interest in, or the establishment

15     or operation of, any enterprise which is engaged in,

16     or the activities of which affect, interstate or

17     foreign commerce;

18

19     (2) 18 U.S.C. § 1962(c):

20     It shall be unlawful for any person employed by or

21     associated with any enterprise engaged in, or the

22     activities of which affect, interstate or foreign

23     commerce, to conduct or participate, directly or

24     indirectly, in the conduct of such enterprise's

25     affairs through a pattern of racketeering activity or

26     collection of unlawful debt; and

27  ///

28

(3) 18 U.S.C. § 1962(d):

(d) It shall be unlawful for any person to conspire to violate any of the provisions of subsection (a), (b), or (c) of this section.

To state a basic civil RICO violation, a plaintiff must properly allege: (1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity (5) causing injury to the plaintiff. <u>Living Designs, Inc. v. E.I. DuPont de Nemours & Co.</u>, 431 F.3d 353, 361 (9th Cir. 2005). To establish a "pattern" under RICO, a plaintiff must show "at least two acts of racketeering activity." 18 U.S.C. § 1961(5).

To prove liability under 18 U.S.C. § 1962(a), a plaintiff must "allege facts tending to show that he or she was injured by the use or investment of racketeering income." <u>Wagh v. Metris Direct, Inc.</u>, 348 F.3d 1102, 1109 (9th Cir. 2003).

To establish liability under 18 U.S.C. § 1962(c), a plaintiff must allege and prove the existence "of two distinct entities: (1) a person; and (2) an enterprise that is not simply the same person referred to by a different name." <u>Living Designs</u>, 431 F.3d at 361 (quotations, citation omitted).

///

To prove liability under 18 U.S.C. § 1962(d), a "conspirator must intend to further an endeavor which, if completed, would satisfy all of the elements of a substantive criminal offense, but it suffices that [he or she has adopted] the goal of furthering or facilitating the criminal endeavor."  First Capital Asset Mgmt., Inc. v. Satinwood, Inc., 385 F.3d 159, 178 (2d Cir. 2004).

BBN argues that "[t]he allegations made by Plaintiffs in this case against [BBN] are insufficient to prevail on a claim for violation of the RICO statutes."  [Mot. at 6.]  BBN goes on to state that Plaintiffs do not sufficiently allege a claim of conspiracy to commit RICO under California state law.  [Id.]  BBN, however, misapplies RICO, which is a federal statute.  While the statute allows for the underlying "racketeering activity" to consist of some crimes "chargeable under State law," 18 U.S.C. § 1961(1)(A), it also allows for the underlying offense to consist of a violation of certain federal statutes, 18 U.S.C. § 1961(1)(B), two of which (mail fraud and wire fraud) Plaintiffs cite as the basis for their RICO claim.  [FAC ¶ 179.]

Plaintiffs's brief rebuttal to BBN's claim that they have failed to allege a RICO claim properly consists of pointing to the FAC, where, Plaintiffs aver, they allege that BBN engaged in a joint enterprise by knowingly

endorsing the business activities of co-conspirators, and allowed the scheme to perpetuate, thus causing harm to Plaintiffs.   [Opp'n at 10-11 (citing FAC ¶ 11(c).][4]

Indeed, Plaintiffs do state the basic elements for a RICO violation against BBN.  They allege conduct (BBN's and its officers' "endorsement of Defendants" and receipt of Defendants' investment) [FAC ¶ 139(c)]; a "joint enterprise between BBN and Defendants" [id. ¶ 139(c)]; a pattern ("commingling the monies received from the *various* sales of the securities . . .") [id. ¶ 139(b) (emphasis added); racketeering activity (all Defendants' alleged offenses of mail fraud and wire fraud) [id. ¶ 179]; and injury to Plaintiffs ("caused harm to Plaintiffs.") [Id. ¶ 139(c).]

Additionally, Plaintiffs properly allege a violation of 18 U.S.C. 1962(c), as they allege a distinct difference between BBN[5] and the activities of MX and others.   [FAC ¶ 139(b).]

///

///

---

[4] While Plaintiffs cite "Complaint, p. 22, ¶ 110(c)", the paragraph of the FAC that actually contains allegations relating to BBN's involvement in the RICO violation is ¶ 139(c).

[5] See 18 U.S.C. § 1961(3) (defining "person" as "any individual or *entity* capable of holding legal or beneficial interest in property.") (emphasis added).

1    Thus, contrary to the arguments made by BBN in its

2  Motion to Dismiss, [Mot. at 5-7], Plaintiffs have

3  sufficiently stated a RICO Claim, and the Court denies

4  BBN's Motion to Dismiss the Claim.

5

6    Plaintiffs, however, have failed to state BBN's

7  alleged violation of the federal mail fraud and wire

8  fraud statutes with the requisite particularity.  The

9  Ninth Circuit has repeatedly held that plaintiffs must

10  follow the heightened pleading standard of Federal Rule

11  of Civil Procedure 9(b) "in RICO actions alleging the

12  predicate act of mail fraud."  Lancaster Cmty. Hosp. v.

13  Antelope Valley Hosp. Dist., 940 F.2d 397, 405 (9th Cir.

14  1991).  See also Allwaste, Inc. v. Hecht, 65 F.3d 1523,

15  1530 (9th Cir. 1995) (stating that a RICO claim

16  predicated on violation of federal wire fraud statute

17  must be pled with particularity under Rule 9(b)).

18

19    Federal Rule of Civil Procedure 9(b) "(Rule 9(b))"

20  states that "[i]n all averments of fraud or mistake, the

21  circumstances constituting fraud or mistake shall be

22  stated with particularity."  Specifically, the Ninth

23  Circuit has held that RICO allegations involving fraud

24  must state with particularity the "time, place, and

25  manner of each act of fraud, plus the role of each

26  defendant in each scheme."  Lancaster Community Hospital,

27  940 F.2d at 405.

28

As Plaintiffs have not alleged violations of mail fraud and wire fraud with the required particularity, the Court orders Plaintiffs to file a RICO Case Statement that complies with the guidelines set forth in Appendix A to this Order no later than August 16, 2006.  Plaintiffs' failure to comply with this Order will result in the dismissal of their RICO claim.

**2.   Negligent Misrepresentation and Negligence**

BBN argues that Plaintiffs' Claims involving negligence must be dismissed because Plaintiffs are unable to establish an essential element of a negligence claim in California: duty.   [Mot. at 8.]

In California, any negligence claim requires duty, breach of duty, proximate cause, and damages.   <u>Artiglio v. Corning Inc.</u>, 18 Cal. 4th 604, 614 (1998).   BBN asserts that, under California law, banks do not have a duty to disclose the "banking practices" of their customers.   [Mot. at 10.]

Indeed, in <u>Software Design & Application, Ltd. v. Hoffer & Arnett, Inc.</u>, 49 Cal. App. 4th 472, 479 (1996), the court pointed out that "[r]ecent cases have held that absent extraordinary and specific facts, a bank does not owe a duty of care to a noncustomer."

///

1    In Sun 'n Sand v. United California Bank, 21 Cal. 3d

2  671, 678 (1978), an employee of Sun 'n Sand who was

3  responsible to depositing company checks altered the

4  amounts of nine checks, each by thousands of dollars, and

5  each payable to the bank.  The employee then presented

6  the checks to the bank.  Id.  Although the bank was named

7  as the payee, the proceeds of the checks were deposited

8  in the employee's personal account.  Id.  The employer

9  brought a claim for negligence against the bank.  Id. at

10  679.

11

12    The court noted that "Sun 'n Sand's loss was

13  reasonably foreseeable" because the employee attempted to

14  divert a check payable to the bank to herself.  Id. at

15  694-95.  Thus, the court held that the bank could be

16  liable for negligence because "Sun 'n Sand's allegations

17  define circumstances sufficiently suspicious that [the

18  bank] should have been alerted to the risk that Sun 'n

19  Sand's employee was perpetuating a fraud."  Id. at 694-

20  95.

21    The court, however, held that it was imposing a

22  "narrowly circumscribed" duty on banks for third parties

23  that "is activated only when checks, not insignificant in

24  amount, are drawn payable to the order of the bank and

25  are presented to the payee bank by a third party seeking

26  to negotiate the checks for his own benefit."  Id. at

27  695.

28

Since <u>Sun 'n Sand</u>, California courts have continued to hold that banks generally hold no duty to third parties in negligence claims, and have confined <u>Sun n' Sand</u> to the particular facts of that case.  <u>See Gil v. Bank of Am., Nat'l Assoc.</u>, 138 Cal. App. 4th 1371, (2006) ("<u>Sun 'n Sand</u> . . . articulates the one narrowly circumscribed situation under which a bank has a duty to a nondepositor to investigate a banking situation. Unlike here, that situation exists when large checks, drawn payable to the order of a bank are presented to the payee bank by a third party seeking to negotiate the checks for his or her own benefit.") (citation omitted) <u>See also Chicago Title Ins. Co. v. Superior Court</u>, 174 Cal. App. 3d 1142, 1559 (refusing to hold that "banks had a duty to reveal suspicions about their customers" thereby "avoid[ing] the loss of privacy, expense and commercial havoc that would result from such a holding.")

Plaintiffs argue that BBN had a fiduciary duty to Plaintiffs, arising from BBN's alleged "roping techniques."  [Opp'n at 11.]  Webber's Declaration describes in detail activity by Ms. Pallan designed to convince Plaintiffs to invest in MX factors.  [Webber Decl. ¶¶ 16-38.]  The Declaration, for instance, states that "Ms. Pallan represented [BBN] while attending a seminar that solicited investors in a Mexican crabbing venture associated with Mx Factors."  [<u>Id.</u> ¶ 33.]

1    California case law holds that "[l]iability to a
2    borrower for negligence arises only when the lender
3    actively participates in the financed enterprise beyond
4    the domain of the usual money lender." Wagner v. Benson,
5    101 Cal. App. 3d 27, 35 (1980).  Thus, Plaintiffs appear
6    to argue that BBN--through its officers--stepped out of
7    its role as a bank and by actively participating in the
8    Ponzi scheme, were not bound to the normal negligence
9    standards imposed on banks toward third parties.

10

11    The Court, however, cannot consider Webber's
12    Declaration for purposes of deciding a 12(b)(6) motion.
13    See Clegg, 18 F.3d at 754  (holding that the the scope of
14    review under Rule 12(b)(6) is generally limited to the
15    contents of the complaint).  Plaintiffs' FAC does not
16    allege clearly that BBN, or its officers, did anything
17    more than accept deposits from other Defendants.   [FAC ¶
18    22.]   The FAC states that BBN "knowingly endors[ed]
19    Defendants' business activities, accepting deposits from
20    Defendants and/or Plaintiffs, referring business to
21    Defendants, accepting referral business from Defendants .
22    . . ."  This is far from and allegation of the elaborate
23    "roping" scheme to which Plaintiffs refer in their
24    Opposition.  [See, e.g., Opp'n at 4 (stating that Ms.
25    Pallan, at a seminar in Mexico, sought potential
26    investors in a Mexican crabbing venture to set up bank
27    accounts at BBN).]

28

1    Accordingly, as presently pled, Plaintiffs do not
2  have valid Claims for Negligent Misrepresentation and
3  Negligence because BBN had no duty to Plaintiffs as third
4  parties.  Accordingly, BBN's Motion to Dismiss these
5  Claims is granted with leave to amend.  See Broam v.
6  Bogan, 320 F.3d 1023, 1026 n.2 (9th Cir. 2003) ("Facts
7  raised for the first time in plaintiff's opposition
8  papers should be considered by the court in determining
9  whether to grant leave to amend . . . .")

10

11    **3.  Breach of Fiduciary Duty**
12    Plaintiffs' Claim for Breach of Fiduciary Duty
13  against BBN is predicated on the allegations that BBN and
14  other Defendants aided and abetted each other in
15  concealing and misrepresenting information relating to
16  MX.  [FAC ¶ 254.]

17

18    In Casey v. U.S. Bank National Assoc., 127 Cal. App.
19  4th 1138, 1144 (2005), a case in which the plaintiff
20  alleged that banks aided and abetted breach of fiduciary
21  duty, the court held that "under California law, a bank
22  owes no duty to nondepositors to investigate or disclose
23  suspicious activities on the part of an account holder."
24  The court further wrote that "California tort law imposes
25  no duty on a bank to investigate or report a depositor's
26  suspicious activities."  Id. at 1153.
27  ///

28

As stated above, Plaintiffs have not adequately pled that the bank or its officers stepped out of their role as a bank and engaged in the "roping" scheme that Plaintiffs allege in their Opposition.   [Opp'n at 11-12.] Thus, under California case law, Plaintiffs do not have a valid Claim for Breach of Fiduciary Duty merely for BBN's alleged acceptance of deposits from other Defendants. [FAC ¶ 22.]   Accordingly, the Court grants BBN's Motion to Dismiss Plaintiffs' Breach of Fiduciary Duty Claim with leave to amend.

### 4.   Breach of the Covenant of Good Faith and Fair Dealing

BBN, while not precisely articulating an argument for dismissal of Plaintiffs' Claim for Breach of the Covenant of Good Faith and Fair Dealing, quotes a California case holding that, in a breach of covenant claim, courts limit the duty imposed upon a bank.

In _Wagner_, plaintiffs Roy and Carol Wagner speculated Mountain Shadows Ranch's ("MSR") cattle raising program. 101 Cal. App. 3d at 31.   The agreement between MSR and the Wagners authorized MSR to act as the Wagners' agent in buying, maintaining, and marketing the cattle.   _Id._ The Wagners borrowed from Lloyds Bank to finance the operation, as part of an understanding prenegotiated between the bank and MSR.   _Id._   The loan agreement with

1  the bank established a maintenance fund with the bank,

2  from which capital was disbursed as needed by MSR.  Id.

3  Under the agreement, if the Wagners's loan obligation

4  exceeded 75 percent of the value of the cattle, the bank

5  could request payment of the sum necessary to regain the

6  proper margin ("margin call").  Id.

7

8      In May 1974, the bank made a margin call to the

9  Wagners.  Id.  The Wagners refused to pay and sued the

10 bank, alleging that the bank had assured them that the

11 investment was safe and that margin calls would be

12 minimal.  Id.  The Wagners's amended complaint included a

13 bad faith claim.  Id. at 32.  The Wagners alleged that

14 the bank acted in bad faith by withholding information

15 about the management of the Wagners's investment by MSR.

16 Id. at 33.

17

18     The court of appeals, in upholding the trial court's

19 dismissal of the Wagners's bad faith claim, wrote that

20 "[t]he success of the Wagners' investment is not a

21 benefit of the loan agreement which the Bank is under a

22 duty to protect."  Id. at 34.  The court reasoned that

23 the use of the loan proceeds was "secondarily related" to

24 the purpose of the Wagners's contract with the bank.  Id.

25

26     BBN argues that, in this case, it owed even less of a

27 duty to Plaintiffs than the duty owed by the bank in

28

1 _Wagner_ to the Wagners.  [Mot. at 10.]  BBN continues

2 that, while the Wagners had borrowed funds from the bank

3 to make the payments for the investment over which they

4 sued the bank for withholding information, here there are

5 no allegations in the FAC that BBN loaned money to

6 Plaintiffs for the purpose of making investments.  [_Id._]

7

8     The Court, in fact, discerns no well-pled allegation

9 in the FAC that Plaintiffs either deposited money into

10 BBN or borrowed money from the bank.  The FAC alleges

11 that BBN or its officers accepted deposits "from

12 Defendants _and/or_ Plaintiffs" and that "BBN actively

13 solicited Plaintiffs' business and deposits . . . ."

14 [FAC ¶ 22 (emphasis added).]  Nowhere in those phrases do

15 Plaintiffs actually plead they had any relationship with

16 BBN.  Thus, as part of a breach of covenant claim, BBN

17 had even less of a duty to Plaintiffs than the bank in

18 _Wagner_ had to the Wagners.  Accordingly, the Court grants

19 BBN's Motion to Dismiss Plaintiffs' Claim for Breach of

20 the Covenant of Good Faith and Fair Dealing with leave to

21 amend.

22

23     **5.   Fraud/Intentional Misrepresentation**

24     Plaintiffs' Claim for Fraud and Intentional

25 Misrepresentation is predicated on Defendants "aiding and

26 abetting each other."  [FAC ¶ 231.]

27 ///

28

1    In California, the necessary elements for a fraud
2  claim are: (1) misrepresentation; (2) knowledge of
3  falsity or scienter; (3) intent to defraud; (d)
4  justifiable reliance; and (e) resulting damage.  <u>Lazar v.</u>
5  <u>Superior Court</u>, 12 Cal. 4th 631, 638 (1996) (citations,
6  quotations omitted).

7

8    BBN argues that Plaintiffs in this case have failed
9  to allege in their FAC that BBN acted with the requisite
10  scienter to make out a fraud claim.  [Mot. at 14.]   In
11  <u>Casey</u>, the court held that a bank cannot be liable for
12  aiding and abetting "absent actual knowledge of the
13  underlying wrong the depositor is perpetrating."  127
14  Cal. App. 4th at 1141.

15

16    Here, Plaintiffs' FAC states that "Pallan and Reno
17  knew, *or should have known*, that the monies received from
18  Defendants were derived from Defendants' fraudulent
19  securities transactions."  [FAC ¶ 139(a) (emphasis
20  added).]   Thus Plaintiffs have not adequately stated a
21  Claim for Fraud against BBN, and BBN's Motion to Dismiss
22  this Claim is granted with leave to amend.[6]

23  ───────────────
24    [6] Because the Court has ruled that Plaintiffs have
   failed to plead the basic elements of a fraud claim, it
25  need not consider BBN's contention that Plaintiffs have
   failed to allege fraud with sufficient particularity.
26  [Mot. at 14-15.]   The Court does note, however, that,
   while BBN is correct that fraud claims need to be stated
27  with more particularity than other claims, it incorrectly
   analyzes the sufficiency of the fraud allegation under
28                                        (continued...)

## 6.   Breach of Contract and Conversion

BBN states as part of a title to a section in its Motion to Dismiss that it seeks to dismiss Plaintiffs' Claims for Breach of Contract and Conversion.   [Mot. at 7.]   BBN also includes a conclusory statement that the Breach of Contract Claim should be dismissed.   [Mot. at 10.]   Beyond that, however, BBN posits absolutely no arguments for dismissal of these claims.   It does not discuss the elements of the two Claims, nor does it discuss whether Plaintiffs have adequately stated the elements in their FAC.

Simply put, BBN makes no arguments, beyond cursory statements, as to why these two Claims should be dismissed.   Accordingly, BBN has not met its burden, and the Court denies the Motion to Dismiss these two Claims.

///
///
///
///

---

[6](...continued)
state law.   Federal courts have held that Rule 9(b)'s particularity requirement "applies to state-law causes of action."   Vess v. Ciba-Geigy Corp. USA, 317 F.3d 1097, 1103 (9th Cir. 2003).   Thus, when a state-law claim is pled in federal court, the court should examine state law "to determine whether the elements of fraud have been pled sufficiently to state a cause of action."   Id.   The procedure for pleading fraud, however, is governed by Rule 9(b).   Hayduk v. Lanna, 775 F.2d 441, 443 (1st Cir. 1985).

**7.   Punitive damages**

    Under California's exemplary damages statute:

> In an action for the breach of an obligation not arising from contract, where it is proven by clear and convincing evidence that the defendant has been guilty of oppression, fraud, or malice, the plaintiff, in addition to the actual damages, may recover damages for the sake of example and by way of punishing the defendant.

Cal. Civ. Code § 3294(a).

    Plaintiffs ask for punitive damages in their Prayer for Relief.  [Prayer for Relief ¶ 3.]  BBN makes clear in its Motion to Dismiss that it is attempting to strike Plaintiffs' request for punitive damages.  [Opp'n at 15-16.]  BBN titles an entire section of its Points and Authorities: "PLAINTIFFS' CLAIM FOR PUNITIVE DAMAGES MUST FAIL AS IT IS NOT SPECIFICALLY PLED."  [Id. at 15.]  It then develops an argument that Plaintiffs are not entitled to punitive damages.  [Id. at 15-16.]

    Plaintiffs, however, do not contest BBN's request to strike punitive damages anywhere in their Opposition.  In fact they do not mention punitive damages once in their Opposition.

///

///

1   Under Local Rule 7-12, failure to file required

2   papers "may be deemed consent to the granting or denial

3   of the motion."

4

5   The Ninth Circuit has upheld the decision of a court

6   to grant a motion to dismiss for failure to file an

7   opposition.  See Ghazali v. Moran, 46 F.3d 52, 54 (9th

8   Cir. 1994).  The court held that, based on another case,

9   Henderson v. Duncan, 779 F.2d 1421, 1423 (9th Cir. 1986),

10  the district court is required to weigh the following

11  five factors before dismissing an action based on a

12  failure to follow local rules:

13          (1) the public's interest in expeditious resolution

14          of litigation; (2) the court's need to manage its

15          docket; (3) the risk of prejudice to the defendants;

16          (4) the public policy favoring disposition of cases

17          on their merits; and (5) the availability of less

18          drastic sanctions.

19  Ghazali, 46 F.3d at 53 (quoting Henderson, 779 F.2d at

20  1423).

21

22  Having weighed the five Henderson factors, the Court

23  concludes that it is appropriate to grant BBN's Motion to

24  Dismiss Plaintiffs' request for punitive damages with

25  leave to amend.

26  ///

27  ///

28

## III. CONCLUSION

For the foregoing reasons, BBN's Motion to Dismiss
for Improper Venue under Federal Rule of Civil Procedure
12(b)(3) is DENIED.  BBN's Motion to Dismiss for Failure
to State a Claim Upon Which Relief Can Be Granted under
Federal Rule of Civil Procedure 12(b)(6) is GRANTED WITH
LEAVE TO AMEND for the following Claims: Claim Fifteen
(Breach of Fiduciary Duty); Claim Sixteen
(Fraud/Intentional Misrepresentation); Claim Seventeen
(Negligent Misrepresentation); Claim Eighteen
(Negligence); and Claim Twenty (Breach of the Covenant of
Good Faith and Fair Dealing).  BBN's Motion to Dismiss
under Rule 12(b)(6) is DENIED for Claim Five (Violation
of RICO); Claim Fourteen (Breach of Contract); and Claim
Nineteen (Conversion).  BBN's Motion to Dismiss
Plaintiffs' request for punitive damages is GRANTED with
leave to amend.  A Second Amended Complaint must be filed
by August 16, 2006.  If Plaintiffs again include a Claim
based on a violation of the Racketeer Influenced and
Corrupt Organizations Act in their Second Amended
Complaint, then they must file a RICO Case Statement that
complies with the guidelines set forth in Appendix A no
later than August 16, 2006, or Plaintiffs' RICO Claim
will be dismissed.

Dated: _July 28 2006_

_Virginia A. Phillips_
         VIRGINIA A. PHILLIPS
       United States District Judge

**APPENDIX A**

The RICO Case Statement shall include those facts upon which Plaintiff is relying and which were obtained as a result of the "reasonable inquiry" required by Federal Rule of Civil Procedure 11. In particular, this statement shall be in a form which uses the numbers and letters as set forth below, and shall state in detail and with specificity the following information.

1. List each defendant and state the alleged misconduct and basis of liability of each defendant.

2. List the alleged wrongdoers, other than the defendants listed above, and state the alleged misconduct of each wrongdoer.

3. List the alleged victims and state how each victim was allegedly injured.

4. Describe in detail the pattern of racketeering activity or collection of unlawful debts alleged for each RICO claim.  A description of the pattern of racketeering shall include the following information:

   a. List the alleged predicate acts and the specific statutes which were allegedly violated;

1      b. Provide the dates of predicate acts, the
2  participants in the predicate acts, and a description of
3  the facts surrounding the predicate acts;

4

5      c. Identify the time, place and contents of the
6  alleged misrepresentations, and the identity of persons
7  to whom and by whom the alleged misrepresentations were
8  made;

9

10     d. State whether there has been a criminal conviction
11 for violation of each predicate act;

12

13     e. State whether civil litigation has resulted in a
14 judgment in regard to each predicate act;

15

16     f. Describe how the predicate acts form a "pattern of
17 racketeering activity";  and

18

19     g. State whether the alleged predicate acts relate to
20 each other as part of a common plan. If so, describe in
21 detail.

22

23 6. Describe in detail the alleged enterprise for each
24 RICO claim. A description of the enterprise shall include
25 the following information:

26

27

28

a. State the names of the individuals, partnerships, corporations, associations, or other legal entities, which allegedly constitute the enterprise;

b. Describe the structure, purpose, function and course of conduct of the enterprise;

c. State whether any defendants are employees, officers or directors of the alleged enterprise;

d. State whether any defendants are associated with the alleged enterprise;

e. State whether the claimant is alleging that the defendants are individuals or entities separate from the alleged enterprise, or that the defendants are the enterprise itself, or members of the enterprise; and

f. If any defendants are alleged to be the enterprise itself, or members of the enterprise, explain whether such defendants are perpetrators, passive instruments, or victims of the alleged racketeering activity.

7. State and describe in detail whether the claimant is alleging that the pattern of racketeering activity and the enterprise are separate or have merged into one entity.

8. Describe the alleged relationship between the activities of the enterprise and the pattern of racketeering activity. Discuss how the racketeering activity differs from the usual and daily activities of the enterprise, if at all.

9. Describe what benefits, if any, the alleged enterprise receives from the alleged pattern of racketeering.

10. Describe the effect of the activities of the enterprise on interstate or foreign commerce.

11. For the alleged violation of 18 U.S.C. § 1962(a), provide the following information:

    a. State who received the income derived from the pattern of racketeering activity or through the collection of an unlawful debt; and

    b. Describe the use or investment of such income.

12. For the alleged violation of 18 U.S.C. § 1962(c), provide the following information:

    a. State who is employed by or associated with the enterprise; and

   b. State whether the same entity is both the liable "person" and the "enterprise" under § 1962(c).

14. For the alleged  violation of 18 U.S.C. § 1962(d), describe in detail the alleged conspiracy.

15. Describe the alleged injury to business or property.

16. Describe the direct causal relationship between the alleged injury and the violation of the RICO statute.

17. List the damages sustained for which each defendant is allegedly liable.

18. Provide any additional information that would be helpful to the Court in processing the RICO claim.